## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**DARRELL RAY PORTER,**

     **Plaintiff,**

**vs.**                                        **CIVIL ACTION NO. 3:20-CV-00447**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered June 30, 2020 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 14, 17)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or for remand (ECF No. 14); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 17); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

1

The Plaintiff, Darrell Ray Porter, (hereinafter referred to as "Claimant"), protectively filed his application for benefits on May 4, 2017 (Tr. at 159-162) alleging disability since February 22, 2017 because of diabetes, a toe amputation, high blood pressure, degeneration of spine, restless leg syndrome, hypoglycemia, acute coronary syndrome, and low kidney function (Tr. at 375). His claim was initially denied on March 15, 2018 (Tr. at 86-91) and again upon reconsideration on June 18, 2018 (Tr. at 93-97). Thereafter, Claimant filed a written request for hearing on July 17, 2018 (Tr. at 98-99).

An administrative hearing was held on July 22, 2019 before the Honorable Melinda Wells, Administrative Law Judge ("ALJ") (Tr. at 28-50). On August 23, 2019, the ALJ entered an unfavorable decision (Tr. at 10-27). On August 29, 2019, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 156-158). The ALJ's decision became the final decision of the Commissioner on June 1, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 2-7)

On May 8, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11) Subsequently, Claimant filed a Memorandum in Support of Plaintiff's Motion for Judgment o[n] the Pleadings (ECF No. 17), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 18). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 40 years old as of the alleged onset date and defined as a "younger person"

throughout the underlying proceedings. See 20 C.F.R. § 404.1563(c). (Tr. at 20) Claimant has a high school education and attended special education classes during his last three years of high school; he subsequently obtained specialized training as an auto mechanic. (Tr. at 376) Claimant stopped working full time when his left great toe was amputated in February 2017 (Tr. at 42); he continued to work afterwards, through the end of 2018, with accommodations made by his employer, but this did not rise to substantial gainful activity levels (Tr. at 33, 15).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this case, the ALJ found Claimant met the insured status requirements through December 31, 2022. (Tr. at 15, Finding No. 1) At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of February 22, 2017. (Id., Finding No. 2) At the second inquiry, the ALJ found that Claimant had the following severe impairments: diabetes mellitus; peripheral neuropathy; obesity; and right shoulder tendon tear. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except he can:

> stand and walk four hours in a workday, but for no more than 30 minutes without interruption and would have to sit for at least 30 minutes before returning to standing and walking. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never reach overhead with the right upper extremity. He can [never][1] be exposed to vibration, work at unprotected heights or around moving machinery, or climb ladders, ropes, or scaffolds. He would need to use a can when walking over uneven terrain or up or down inclines.

---

[1] Though omitted in the written decision, the ALJ's hypothetical to the vocational expert included the word "never" with respect to these particular environmental limitations. (See Tr. at 47)

(Id., Finding No. 5) At step four, the ALJ found Claimant was not capable of performing any of his past relevant work. (Tr. at 19, Finding No. 6) However, in addition to the immateriality of the transferability of job skills, based on Claimant's age, education, work experience, and RFC, the ALJ determined that Claimant is capable of performing other jobs that exist in significant numbers in the national economy. (Tr. at 20, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability since February 22, 2017 through the date of the decision. (Tr. at 21, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because she failed to properly consider his treating source opinion that he would be absent from work more than three times a month (ECF No. 14 at 4-5, 6). Claimant contends that his treating podiatrist's opinion regarding absenteeism is mirrored by the vocational expert's testimony that he would be unable to maintain employment should he be absent more than two days per month. (Id.) Claimant contends that the light RFC assessment is inconsistent with myriad of physical impairments, to the extent that the ALJ failed to fairly consider same. (Id. at 5) The ALJ also "[w]ithout substantial justification", determined Claimant's degenerative changes in his cervical and lumbar spine and hypertension were not severe impairments. (Id.) The ALJ's RFC assessment is also inconsistent with Claimant's testimony concerning pain and fatigue, which reasonably demonstrate he is unable to work because he would exceed workplace tolerances for absenteeism as noted by the vocational expert. (Id. at 5-6) The ALJ also relied upon the opinions provided by state agency consultants, neither of whom treated or examined Claimant. (Id. at 6) Claimant asks for reversal with an award for benefits, or for remand. (Id.)

In response, the Commissioner asserts that Claimant carried the burden of proving disability, and failed to do so. (ECF No. 17 at 8) Additionally, the Commissioner contends that the ALJ considered all Claimant's impairments, including the non-severe ones, both alone and in combination and accounted for them in a comprehensive RFC finding. (Id. at 8-12) The Commissioner argues that the ALJ also properly considered not only Claimant's treating podiatrist's opinion, but the state agency medical consultants' opinions pursuant to the revised Regulations, and explained their persuasiveness or lack thereof, based on their consistency with and supportability by the overall record. (Id. at 12-18) Finally, the Commissioner contends that substantial evidence supported the ALJ's decision and asks this Court to affirm. (Id. at 18)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Medical Evidence Concerning Diabetes Treatment and Related Conditions:

Claimant has a long history of uncontrolled diabetes mellitus (Tr. at 1707). His A1C readings ranged from 8.4 to 14.4 (Tr. at 491, 508, 598, 834, 1601, 1635, 1892, 1926, 1937). In April 2017, Claimant was hospitalized for hyperglycemia with diabetic ketoacidosis; he reported blood sugar readings of 410, 520, and 570 and blurred vision (Tr. at 771-773). In February 2018, his blood sugar was 167 during a hospital admission (Tr. at 1713). He was non-compliant with diet and medications (Tr. at 1707, 1169, 1198, 1999).

Claimant had acute renal failure due to antibiotic use for osteomyelitis in March 2017 (Tr. at 816-818). His symptoms improved after his antibiotics were changed (Id.).

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Claimant also has hypertension, but his blood pressure was stable and well controlled with medication, with no findings suggestive of symptomatology or end organ damage (Tr. at 1166, 1175, 1191-1192, 1195, 1587, 1593, 1623, 1962, 1977, 1995, 2031, 2040, 2053, 2059).

The medical record also shows that Claimant is obese. Documents report his height ranging from 67 to 74 inches, and his weight ranged from 299 up to 350 pounds, with a BMI ranging from 39 to 52.3 (Tr. at 509, 529, 580, 587, 745, 919, 1356, 1508, 1517, 1583, 1601, 1609, 1622, 1628, 1877, 1903, 1913).

Throughout the relevant period, Claimant received both outpatient and inpatient treatment for diabetic ulcers and fractures in his feet associated with Charcot neuroarthropathy (Tr. at 540-46, 41, 551-562, 578-581, 942, 961-963, 968-971, 1010-1011, 1023-1027, 1206-1209, 1216-1217, 1219-1220, 1222-1223, 1225-1313, 1377-1379, 1495-1497, 1525-1541). In April 2016, Claimant underwent resection of the second digit of the left foot due to acute osteomyelitis with intraosseous abscess secondary to diabetes mellitus (Tr. at 557, 559, 1206). Several months later, in February 2017, he underwent amputation of the left great toe due to osteomyelitis (Tr. at 1795-1797). In February 2018, Claimant had diabetic ulcers of the plantar aspect of the left foot (Tr. at 580, 1023-1027, 1395-1399). In March 2018, an MRI of the left foot showed evidence of osteomyelitis in the PIP joint of the second digit (Tr. at 561), and Doppler testing showed ulceration of the left second digit (Tr. at 562). In June 2018, imaging showed septic arthrosis involving the fifth MTP joint and osteomyelitis of the fifth MTP head and proximal phalanx with associated pathological fractures (Tr. at 1378). Examinations showed sensation loss in the toes bilaterally, tingling and paresthesia to the lower extremities, and a limping, ataxic gait (Tr. at 1616, 1622, 1633).

In July 2018, treating podiatrist Karen Lo, DPM, certified that Claimant may return to work

the next month (Tr. at 1159). However, by October 2018, Dr. Lo encouraged Claimant to apply for disability because he developed problems every time he returned to work despite wearing appropriate shoe gear and accommodative inserts (Tr. at 1550).

In July 2019, Dr. Lo, completed a questionnaire on Claimant's behalf, and listed Claimant's diagnoses and treatment (Tr. at 1958). Dr. Lo opined that Claimant had no sitting limitation but could stand and walk less than two hours; could lift twenty pounds occasionally and less than ten pounds frequently; needed an opportunity to shift at will between sitting and standing/walking, but did not need to lie down at unpredictable times during the workday; and would be absent more than three times per month (Id.).

Medical Records Related to Musculoskeletal Impairments:

Claimant sought emergent care for right shoulder pain in March 2019 (Tr. at 1355-1357, 1359). An X-ray of the right shoulder showed hypertrophic degenerative changes at the right AC joint (Tr. at 1364). A June 2019 MRI of the right shoulder showed partial articular sided and intrasubstance subscapularis and supraspinatus tears with medial subluxation of the long head biceps tendon (Tr. at 1944-1945). Subsequent examinations showed that Claimant had limited right shoulder range of motion, mild weakness of the supraspinatus, point tenderness, and swelling (Tr. at 1942, 1947, 1951).

Claimant had cervical and lumbar spine degenerative changes in the cervical and lumbar spine, which was confirmed by imaging (Tr. at 726, 728, 756). Treatment for his back pain mainly involved medication and steroid injection (Tr. at 733, 752, 916, 954-955). Examinations contained no findings of spasm or deficits in range of motion (Tr. at 1587, 1592, 1616, 1622, 1633, 1796, 1808, 1813, 1932).

State Agency Medical Consultant Opinions:

James B. Smith, M.D., and Wyatt Beazley, III, M.D., conducted a review of the record in March and June 2018, respectively (Tr. at 58-61, 72-74). Drs. Smith and Beazley assessed that Claimant could perform light level exertion, but he could only stand/walk for four hours; occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and avoid all exposure to hazards (Tr. at 59-60, 72-74). Drs. Smith and Beazley discussed Claimant's treatment history relating to his foot issues, including diabetic ulcers, toe amputation, and ablation, in 2017 and 2018 (Tr. at 60, 74). Drs. Smith and Beazley noted that Claimant responded well to treatment and recovered enough to return to work in 2017, and they expected him to recover again (Id.). Drs. Smith and Beazley also considered Claimant's BMI in the low 40s and past intact gait and station in finding he could perform a range of light work (Id.).

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he and his wife reside with his parents, and were taking care of them. (Tr. at 32) He testified that in February 2017 is when he started having problems with his feet, and when his big toe was amputated. (Tr. at 42) He explained that he returned to work after his onset date but received accommodations, allowing him to sit every half hour or so and then return to his work; however, beginning in 2018, he was having medical problems and missed a lot of work so his doctor took him off work and had not released him to go back. (Tr. at 33)

Claimant testified that his feet prevent him from working: he said he cannot stand very long and has to sit, and his feet get numb and swell. (Tr. at 35) He stated that his feet hurt all the

time, and especially whenever he is on them a lot; it helps the pain whenever he is off his feet. (Tr. at 36) His feet are also numb due to neuropathy, to the point where he could step on a nail and not even feel it. (Tr. at 44)

He also stated that his lower back hurts all the time, which also prevents him from working, and he has to twist and turn and get up and stand a little bit and then sit down for a little bit. (Tr. at 35) He said his back pain gets worse from sitting and from picking up heavy stuff like he used to when working; he said that laying down at night will ease his pain a little bit. (Tr. at 35-36) He denied that his back pain radiated down his legs, it was just in the lower part of his back. (Tr. at 44)

Claimant also has right shoulder pain that comes and goes, when he's just sitting around, it doesn't bother him, but moving the shoulder a lot will. (Id.) He testified that his doctor diagnosed two tears in his rotator cuff, however surgery is not an option currently because of his high blood sugars. (Tr. at 43)

Claimant takes medication for his conditions; he testified that his blood pressure is controlled, and his blood sugars are controlled when he is able to get his medicine – Walmart is where he gets his prescriptions filled and this week they ran out of his medicine. (Tr. at 37) He denied that his medication helps with pain, but he experienced no side effects from them. (Id.) Claimant received injections for pain as well, he testified that it helped for a little while, but the pain started back. (Tr. at 38) Claimant has also tried physical therapy, and denied that it helped any. (Id.) He also uses ice and heat for pain and swelling relief. (Tr. at 39)

Claimant recently got a cane that he uses to keep the weight off his left foot due to a fractured bone; he also uses it for walking long distances. (Tr. at 38) He testified that he can walk

about 15-20 feet before he needs to stop. (Tr. at 39) Claimant stated that he doesn't have to use the cane for flat surfaces, but does for uneven surfaces. (Tr. at 45)

Claimant testified that he doesn't have trouble reaching with his left hand, but does with his right, stating that "it catches" when reaching upwards; he testified that sometimes his hands go numb, but not often. (Tr. at 39-40) When his hands do go numb, he has trouble gripping, and drops things. (Tr. at 45) He estimated he could lift about 20 pounds. (Tr. at 39)

Claimant testified that sleeps about eight to ten hours at night, and takes naps during the day. (Tr. at 40) He does some household chores, picking up a little and taking clothes to the laundry room and sweeps every now and then; his oldest son does most of the dishes and lawn work. (Id.) He doesn't shop, but will drive his wife to the store and will sit on a bench while she shops.

For hobbies, Claimant watches some television, but not all day, he goes out to sit on the porch and watch cars go down the street, and he sits and talks with his son and watches him play video games. (Tr. at 41)

Vocational Expert ("VE") Testimony:

The impartial VE testified that Claimant's past relevant work as an automobile mechanic is medium and skilled, and very heavy as performed; his past relevant work as a lubrication servicer is medium, semiskilled, and light as performed, but combined with his past work as a tire changer was semiskilled and heavy as performed; another past work as a combined building sign erector was semiskilled and heavy as performed. (Tr. at 47)

The ALJ then asked the VE to assume a person of Claimant's age, education, and work experience who could perform a limited range of light work; can stand and walk four hours in a workday, but for no more than 30 minutes without interruptions and then would have to sit for at

least 30 minutes before returning to standing and walking; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never reach overhead with the right upper extremity; can never climb ladders, ropes or scaffolds; never be exposed to vibrations; and can never work at unprotected heights or around moving machinery. (Id.) In response, the VE testified that while the individual could not perform Claimant's past work, the individual could perform the work of a nuts and bolts assembler, small parts assembler, and price marker, each of which are unskilled, light exertion jobs. (Tr. at 47-48) The VE also testified that the individual would remain capable of performing these jobs even if cane use was necessary when walking over uneven terrain or up or down inclines. (Tr. at 48) However, the VE testified that if the individual were to be absent two or more days per month, the individual would not be able to perform any work. (Id.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

## Analysis

As an initial matter, although Claimant lists his numerous conditions and ailments found throughout the medical record, at no time does he specify how these conditions, either singly or in combination, have affected his functioning.[3] Courts within this Circuit have long recognized, however, that a diagnosis or medical condition is not necessarily disabling; there must be a showing of a related functional loss. See <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) (internal citation omitted). Further, Claimant also does not specify which impairment specifically meets or equals any Listing. As noted *supra*, Claimant bears the burden of proving he has an impairment or combination of impairments that meets or medically equals the severity of Listing requirements. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).[4]

The Regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

---

[3] Claimant asserts that he suffers from the following: diabetes 2; obesity; hypertension; disc bulging and protrusions; degenerative changes in cervical and lumbar spine; lumbar spondylosis; peripheral arterial disease; neuropathy; amputation of toes and parts of foot; osteomyelitis; MRSA; staph infection; sepsis; gangrene; acute renal failure; bilateral hand numbness; and right shoulder tendon tear. (ECF No. 14 at 2-3, 5)

[4] The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

13

See 20 C.F.R. § 404.1523(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on Claimant's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. § 404.1525(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, Claimant must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531. Claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

Claimant also conclusively states that the ALJ "[w]ithout substantial justification" determined that the degenerative changes in his cervical and lumbar spine and hypertension were not severe impairments. (See ECF No. 14 at 5) At the second step in the sequential evaluation process, while the ALJ noted that imaging studies of Claimant's cervical and lumbar spine showed degenerative changes and that he had been diagnosed with lumbar spondylosis (Tr. at 15, 726-764,

765-960)[5], examinations were normal, with no findings of spasm or restriction in his range of motion (Tr. at 15, 1582-1650, 1654-1878, 1916-1941)[6]. With regard to Claimant's hypertension, the ALJ noted that "the record shows his blood pressure is stable and well controlled with medication, with no findings suggestive of symptomatology or end organ damage." (Tr. at 16, 1161-1344, 1582-1650, 1909-1915, 1916-1941)[7] Accordingly, the ALJ determined that none of these impairments were severe, as the evidence did not establish any significant limitations of work-related functioning. (Tr. at 15-16) To the extent Claimant argues the ALJ provided no justification for this finding, the undersigned **FINDS** this argument lacks merit.[8]

Evaluation of Medical Opinion Evidence:

As noted *supra*, Claimant argues that the RFC assessment is flawed because it did not adopt his treating podiatrist's opinion that he would be absent in excess of workplace tolerances, and to the extent he contends that the ALJ gave this opinion improper credit versus those provided by the state agency medical consultants, the undersigned **FINDS** these arguments lack merit.

The ALJ explicitly applied the regulatory framework pursuant to Section 404.1520c to claims filed after March 27, 2017: "[a]s for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight,

---

[5] The ALJ referenced treatment records and MRI results from Valley Health Systems, dated September 21, 2016 through August 31, 2017 and hospital records with labs, EKG, history and physical, discharge summary and x-ray results from St. Mary's Hospital dated January 10, 2017 through April 5, 2017.

[6] The ALJ referenced office treatment records from Valley Health in Huntington dated May 10, 2018 through May 29, 2019, hospital records from Cabell Huntington Hospital dated January 1, 2016 through June 3, 2019, and office treatment records from Ronald J. Innerfield, M.D. with Marshall Health, dated January 1, 2014 through June 13, 2019.

[7] In addition to the records already cited earlier, the ALJ referenced treatment records from Valley Health Systems dated November 3, 2015 through February 19, 2018 as well as additional records from Dr. Innerfield dated December 31, 2018. The ALJ had another exhibit cited, "1", however, the undersigned is uncertain this is referring to Exhibit 1F, as most of those records appear to concern treatment for Claimant's feet, including his February 2017 amputation of his left great toe, and one record dated May 12, 2016 indicated his hypertension was in "good control" (Tr. at 509).

[8] Though not explicitly noted by the ALJ in the written decision, it is also significant that Claimant admitted during the hearing that his blood pressure was controlled. (Tr. at 37)

to any administrative medical finding(s) or medical opinion(s), including those from your medical sources." (Tr. at 18) It is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. § 404.1546(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). In addition, the applicable Regulations provide that a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at § 404.1513(a)(5).

In this case, the ALJ properly applied Section 404.1520c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, as noted by the ALJ herein, *supra*, an adjudicator in not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. § 404.1520c(a). Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. § 404.1520c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. § 404.1520c(c). The ALJ "may" comment on the other factors, including the

source's relationship with the claimant, but generally has no obligation to do so. Id. § 404.1520c(b)(2)-(3).

With regard to the opinion evidence, the ALJ first addressed the state agency medical consultants' opinions, and explicitly found them persuasive because they are consistent with the treatment history and supported by the objective medical findings. (Tr. at 18-19, 51-62, 65, 76) The ALJ went on to explain that despite Claimant's obesity, he appeared to experience no significant limitation from this condition, aside from diabetes; the ALJ observed that Claimant did experience complications in his lower extremities due to diabetes, including an antalgic gait, although he continued to work at least part time. (Tr. at 19) However, the ALJ also noted that since the state agency medical consultants' opinions, additional evidence shows the need for greater limitations, particularly with respect to the degenerative changes in Claimant's right shoulder, which caused limited range of motion and mild weakness. (Id.) As a result, the ALJ determined that Claimant's RFC should be further restricted to no overhead reaching with that extremity, but balanced this limitation with Claimant's testimony that he had no problems with reaching in other directions or with using his right hand. (Id.) The ALJ also considered, and added the restriction to permit Claimant to sit for thirty minutes after standing for thirty minutes and to use a cane on uneven surfaces and inclines because of his lower extremity sensation loss and antalgic gait. (Id.)

The ALJ then addressed the opinion by Karen Lo, DPM, *supra*, and noted that in her treatment records, she encouraged Claimant to apply for disability benefits in October 2018 because every time he returns to work, he develops other problems despite wearing the appropriate shoe gear and accommodative inserts. (Tr. at 19, 1956-1958, 1550) The ALJ determined Dr. Lo's opinion was not persuasive, noting that as a podiatrist, her experience extends to limitations

involving the feet. (Tr. at 19) The ALJ also observed that while Claimant did experience lower extremity complications from diabetes, the record showed he was noncompliant with treatment; the ALJ also noted that the record showed Claimant had no significant gait abnormalities beyond an antalgic gait, and no lower extremity weakness or balance difficulties. (Id.) The ALJ referenced numerous records which showed Claimant had been able to continue "fairly heavy work activity, including significant standing and walking by his own report" (Tr. at 19, 1345-1524, 1654-1878, 2072-2177).[9] The ALJ then determined that the abnormal findings of sensation deficit and antalgic gait are sufficiently accommodated by the use of a cane on inclines and uneven surfaces and limiting Claimant to four hours standing and walking with the option to sit for thirty minutes after standing or walking for thirty minutes. (Tr. at 19)

In this case, it is clear that the ALJ discharged her duty pursuant to the Regulations concerning the opinion evidence, noting how the opinions were supported by the evidence of record, while recognizing where they fell short of supportability; in addition, the ALJ reconciled where the opinion evidence was consistent and inconsistent with the overall record. Further, as noted by the Commissioner, although the ALJ had no duty to do so, she recognized Dr. Lo's specialty. (ECF No. 17 at 16; citing 20 C.F.R. § 404.1520c(c)(5) (stating a medical opinion from a medical source that has received advanced education and training to become a specialist may be more persuasive about medical issues relating to his specialty than the opinion of a source who is not a specialist). In sum, the ALJ provided a thorough and adequate explanation for how she found the opinions persuasive or not, and properly considered them and incorporated them to the extent

---

[9] The ALJ referred to medical records from St. Mary's Medical Center dated August 20, 2017 through May 3, 2019; hospital records from Cabell Huntington Hospital dated January 1, 2016 through June 3, 2019; and office treatment notes from Valley Health System dated December 31, 2018 through July 6, 2019.

she found them supportive and consistent with the record in her RFC assessment. Accordingly, the undersigned **FINDS** the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

<u>The RFC Assessment and Hypothetical Questions to the Vocational Expert:</u>

Claimant also asserts that "it is difficult to understand how" the ALJ arrived at the light RFC assessment, given his physical impairments, and conclusively states that the same evidence the ALJ considered in her RFC determination also support Claimant's testimony that he is unable to work. (ECF No. 14 at 5)

A claimant's RFC represents the *most* that the individual can do despite his limitations or restrictions. <u>See</u> SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. § 404.1545(a). The RFC determination is an issue reserved to the Commissioner. <u>Id</u>. § 404.1546(c).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted); see also <u>Felton-Miller v. Astrue</u>, 459 F. App'x 226, 231 (4th Cir. 2011).

To the extent that Claimant is arguing that the RFC assessment is not supported by substantial evidence, this Circuit has recognized that "there is no rigid requirement that the ALJ

specifically refer to every piece of evidence in his decision" <u>Reid v. Comm'r of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)). Instead, an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (quoting <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ provided a comprehensive review of the record evidence, which included Claimant's testimony and subjective statements, his work activity, the objective medical findings, his treatment history, and as noted *supra*, the medical opinion evidence. (Tr. at 15-19) As mentioned above, the ALJ specifically included accommodations to Claimant's light RFC by eliminating overhead reaching with his right upper extremity and to lifting no more than twenty pounds, additionally, the ALJ acknowledged Claimant's alleged limitations about his difficulties with prolonged sitting, standing, and walking, and his need for a cane when walking on unsteady ground, uneven surfaces, and going up or down inclines. (Tr. at 16, 17) These accommodates are documents in the objective medical record, despite the ALJ also observed that "[t]he claimant also testified that he continued to work since the alleged onset date as a mechanic at least part-time. He told his doctor in January 2019 that he was walking a lot during the workday" (Tr. at 18, 1185). Further, the ALJ noted "[w]hile saying he was disabled from work activity, [Claimant] injured his right shoulder while working on a transmission with his dad in March 2019" (Tr. at 18, 1877). The ALJ also noted that Claimant "reported cutting his thumb on some sheet metal in May 2019" (Tr. at 18, 1345-1347). In short, the ALJ found that "[t]he record shows the claimant has, despite his impairments, continued to engage in fairly heavy work activity at least on a part time basis." (Tr. at 18)

As noted *supra*, although Claimant summarily contends the ALJ did not consider his

numerous conditions, he merely lists the various diagnoses throughout the record without any specific identification as to a related functional loss. See <u>Gross</u>, *supra*. Regardless, the ALJ did accommodate Claimant's credibly established limitations resulting from his impairments in the hypotheticals to the vocational expert by restricting him to no reaching overhead with the right upper extremity and to only stand and walk four hours during an eight-hour workday, with allowances for sitting for thirty minutes uninterrupted before returning to standing and walking and to using a cane for walking over uneven terrain or up or down inclines, *supra*. (Tr. at 16)

In light of Claimant's argument that the ALJ "should have accepted the testimony of the Vocational Expert who testified that [Claimant] cannot engage in any substantial gainful activity if he is absent 2 or more days per month from work" (ECF No. 14 at 5-6, citing Tr. at 48), it is noted that this Circuit has long since held that hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. <u>See Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). As stated above, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. <u>See</u> SSR 96-8p, 1996 WL 3741784, at *7. Just because the vocational expert's testimony concerning absenteeism mirrors Dr. Lo's opinion, this does not mean that the ALJ was obligated to accept or adopt this testimony *in toto* – particularly in light of the conflicting evidence concerning Claimant's alleged disabling conditions, despite his continued working at fairly heavy levels at least part-time. Accordingly, the undersigned **FINDS** that the vocational expert's responses to the ALJ's controlling hypothetical question(s) were supported by substantial evidence.

Although Claimant advocates for an alternate decision, as already stated herein, such are matters necessarily involving the resolution of conflicts in the evidence of record, and are

evidentiary findings within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that he could perform light exertional work with certain limitations, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7.

In short, the ALJ's narrative of the record included the objective medical evidence, such as imaging and examination findings, as well as the other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and the ultimate determination that Claimant remained capable of performing light work provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at [her] conclusions" therefore remand is not necessary. Mascio, 780 F.3d at 637. Accordingly, the undersigned **FINDS** that the ALJ's RFC assessment as well as the controlling hypothetical questions to the vocational expert were based upon substantial evidence.

Finally, the undersigned further **FINDS** that the ALJ's analysis of the evidence of record, and the final decision denying Claimant's applications for benefits are also supported by the substantial evidence.

**<u>Recommendations for Disposition</u>**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 14), **GRANT** the Defendant's request to affirm the decision below (ECF No. 17), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 22, 2021.



Omar J. Aboulhosn
United States Magistrate Judge